## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN DOE, JANE DOE,        ) | |
|          ) | |
|        Plaintiffs,    ) | |
|          ) | |
| v.          ) | Case No. |
| INDIANA UNIVERSITY, the BOARD OF    ) | |
| TRUSTEES OF INDIANA UNIVERSITY,    ) | |
| LIBBY SPOTTS, individually and as agent for  ) | **JURY DEMANDED** |
| Indiana University, GRETCHEN HANDLOS,    ) | |
| individually and as agent for Indiana University,  ) | |
| INDIANA UNIVERSITY POLICE    ) | |
| DEPARTMENT, WYATT CHAUDION, in his   ) | |
| individual and official capacity, CHARLOTTE  ) | |
| WATTS, in her individual and official capacity,  ) | |
| BLOOMINGTON POLICE DEPARTMENT,   ) | |
| Unknown Officer 1, in his individual and official  ) | |
| Capacity, Unknown Officer 2, in his individual and  ) | |
| Official capacity,    ) | |
|          ) | |
|       Defendants.   ) | |

## COMPLAINT

Plaintiffs, John Doe and Jane Doe, by their attorneys Aronberg Goldgehn, as and for their Complaint against Defendants, respectfully allege as follows:

## NATURE OF THE CASE

1.     This case is brought on behalf of Plaintiff, John Doe, a former Indiana University student who, despite a previously unblemished disciplinary and academic record, was prohibited from completing his MBA Program with the Kelley School of Business.  John Doe was a high-achieving student set to graduate from Indiana University with his MBA in May of 2023, with plans to pursue a job in investment management.  John Doe's academic and career plans were destroyed as a result of an arrest and subsequent disciplinary case based on false accusations of

strangulation that are unsupported by objective evidence.  Also on that weekend, John Doe's sister, Jane Doe, was arrested by Indiana University Police ("IUPD") and charged with drug possession. Her charges were also unsupported by objective evidence but nevertheless led to her incarceration in the Bloomington Police Station.  John Doe was detained for a period of around 30 hours without access to an attorney and without the ability to make a telephone call as required by law.  Jane Doe was detained for a period of over 5 hours without access to an attorney and without the ability to make a telephone call.

2.       The charges of strangulation were issued by IUPD officers after an argument between John Doe and two other University students (the "Accusers").  The Accusers removed $50 from John Doe's possession, and a verbal disagreement ensued.  Jane Doe obtained the $50 from the Accusers, and both John Doe and his sister left the scene.  The Accusers called IUPD, claiming that John Doe physically attacked them, grabbing one around the neck.  The officers did not observe any signs of physical harm or strangulation on the Accusers, yet located John Doe outside the building and took him into custody, charging him with robbery and strangulation.  The officers also called Jane Doe after obtaining her cell number from John Doe, to lure her back to the building whereupon the officers took her into custody, ultimately charging her with theft and possession of a legend drug.  All of the unsupported charges against John Doe and Jane Doe were ultimately dismissed.  Prior to executing the arrest, IUPD made no attempt to view the building's surveillance camera footage which would have shown them almost contemporaneously what had occurred, nor did they make any attempt to secure the footage for future evidentiary purposes.  In addition, IUPD failed to obtain a copy of the surveillance camera footage that documented the events of that night.

3.      The unsubstantiated accusations of robbery and strangulation were upheld by Defendant Indiana University in its suspension and hearing process that denied due process of law, and that can best be described as either a kangaroo court or a star chamber proceeding. The Accusers' evidence was uncorroborated and the only objective evidence presented at the hearing was the testimony of an anonymous "witness" who saw nothing. That evidence was admitted against John Doe over his objection and in violation of his rights to confront witnesses against him. The video surveillance footage, requested repeatedly by John Doe to be produced, which would have provided independent evidence of the encounter between John Doe and his Accusers, was in the possession and control of the University which conducted the hearing, but that footage was lost or destroyed by the University. The footage was not made available to John Doe for use in his defense. This was a stacked and biased hearing, with no due process, no presumption of innocence, but rather an assumption that the Accusers' self-serving statements were reliable. There was no reasoned consideration of evidence as required by a burden of proof. There was no objective evidence presented that the Accusers' claims were true, and the best evidence of what took place that night, surveillance footage captured on a University-managed property, was lost or destroyed by the University despite John Doe's numerous attempts to secure the footage to support his defense. Not surprisingly, the kangaroo court upheld John Doe's suspension.

4.      In April of 2022, a couple of months after the University affirmed John Doe's suspension, the Monroe County Prosecutor's Office dismissed the charges against John Doe and Jane Doe. When John Doe advised the University of the dismissal, via an email to the Senior Associate Dean of Students, Director of Student Conduct, Deputy Title IX Coordinator, Libby Spotts, she refused to consider reopening John Doe's matter and informed him that the dismissal of the charges had no bearing on the University's suspension, and that John Doe could not be

readmitted to the University until the full 1-year suspension term was completed.  In denying readmission, Spotts cited to no authority or rule which required the suspension to last one year, nor did she cite to any written rule indicating that the termination of charges has no impact on a suspension term.  This was arbitrary and capricious and a further deprivation of John Doe's due process rights.

5.      Prior to his suspension, John Doe was taking part in the University's Kelley School of Business 3/2 MBA program, which combines undergraduate and graduate coursework such that its participants graduate in 5 years with a BA and an MBA.  At the time of his summary suspension, John Doe was beginning his spring semester of his third year of coursework, meaning he had completed ¼ of his MBA classes.  But for the suspension, John Doe would have graduated with both degrees in May of 2023.

6.      Given no other options, John Doe completed the University's suspension process, and was officially readmitted on March 10, 2023.  However, the readmission was not a true readmission.  The University prohibited John Doe from re-enrolling in the 3/2 MBA Program he took part in prior to his suspension.  The University did not restore John Doe to the position he was in prior to the summary suspension and the University did not permit John Doe fully resume his coursework.  Instead of suspending John Doe's studies, the University only readmitted John Doe to complete his undergraduate program.  The clear implication of the rules regarding suspension and readmission provide for exactly that: readmission at the end of suspension.  The University's partial readmission was a violation of the clear language and implication of the University's policies.  The policies for summary suspension and readmission are set forth in full on the University's website.  The University violated its own policies when it only readmitted John

Doe to complete his undergraduate program.  This partial readmission is arbitrary and capricious and a further violation of John Doe's due process rights.

## THE PARTIES

7.      Plaintiff, John Doe, is a resident of the state of Illinois.  During the events described herein, John Doe was a student at Indiana University residing within the Southern District of Indiana, Indianapolis Division.

8.      Plaintiff, Jane Doe, is a resident of the state of Illinois.  During the events described herein, Jane Doe was a graduate student at the University of Wisconsin in Madison, and visiting her brother, John Doe, within the Southern District of Indiana, Indianapolis Division.

9.      Defendant, Indiana University and the Board of Trustees of Indiana University ("University" or "IU"), is a public state university located within the Southern District of Indiana, Indianapolis Division.

10.     Defendant, Libby Spotts ("Libby") is an individual that works as the Senior Associate Dean of Students, Director of Student Conduct, Deputy Title IX Coordinator, with the University within the Southern District of Indiana, Indianapolis Division, at all relevant times.

11.     Defendant, Gretchen Handlos ("Gretchen"), is an individual that works as the Executive Director of Graduate Accounting Programs with the University within the Southern District of Indiana, Indianapolis Division at all relevant times.

12.     Defendant, Indiana University Police Department ("University Police" or "IUPD"), are appointed by the Indiana University Board of Trustees and granted police powers by the State of Indiana under IC 21-39-4, and by Indiana University policy PS-PD-01.

13.     Defendants Wyatt Chaudion ("Officer Chaudion") and Charlotte Watts ("Officer Watts") are individuals and have resided and worked as IUPD officers within the Southern District of Indiana, Indianapolis Division, at all relevant times.

14.     Defendant, Bloomington Police Department ("BPD"), are granted police powers by the State of Indiana and charged with upholding Indiana state law and protecting the constitutional rights of residents of the state of Indiana.  BPD is also responsible for the oversight, training, and hire of police department personnel, officers, and staff, and for implementation of policies and procedures at the BPD.

15.     Defendants Unknown Officer 1 and Unknown Officer 2 are individuals and have resided and worked as BPD officers within the Southern District of Indiana, Indianapolis Division, at all relevant times.

16.     Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 1367, 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

17.     All of the events, transactions and occurrences giving rise to this lawsuit took place within the Southern District of Indiana, Indianapolis Division.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## **RELEVANT FACTS**

19.     In January 2022, John Doe was a University Student taking part in the 3/2 MBA Program, which combines undergraduate and graduate coursework in order for students to graduate with a Kelley MBA in 5 years.

20.     In January 2022, Jane Doe was a graduate student attending the University of Wisconsin-Madison.  During the events in question, Jane Doe was visiting her brother, John Doe.

21.     In January 2022, John Doe was in the second-half of his 4th year of studies, meaning he had completed ¼ of his 3/2 MBA coursework.

22.     Up until January 30, 2022, John Doe's academic and disciplinary record was unblemished.

A.      **Details of Wrongful Arrest**

23.     Early in the morning on January 30, 2022, John Doe was out with his sister, Jane Doe, and friends, and the group ended up playing games with Accuser 1 and Accuser 2 two male students they met that night (together, the "Accusers") in a game room located at the Avenue on College apartments.

24.     In January of 2022, the Avenue on College was a University-managed student residence property.

25.     While playing ping pong with John Doe, the Accusers removed $50.00 from John Doe's wallet, which was on the ping pong table, and thereafter a verbal dispute ensued when the Accusers refused to return the money.  The $50.00 belonged to Jane Doe and was being held by John Doe at the time.

26.     Ultimately, Jane Doe obtained the return of the $50.00 from the Accusers.

27.     John Doe and Jane Doe left the premises, and did not take any money or property belonging to the Accusers.

28.     On information and belief, the Accusers called IUPD after John Doe and Jane Doe left the premises.

29.     The Accusers told IUPD officers that John Doe demanded the return of his $50, and in the process laid hands on each of them and choked Accuser 2.

30.     IUPD Officers located John Doe outside the building and took him into custody, transporting him to the station for questioning.

31.     IUPD officers also called Jane Doe, asking her to come back for her brother. Officer Watts called Jane Doe from her personal cell phone, which came up as an unknown number.  Officer Watts did not identify herself as a police officer to Jane Doe.  When Jane Doe arrived, IUPD officers arrested her as well.

32.     IUPD officers prepared police reports based on the Accusers' descriptions of events.  The police reports describe how the officers evaluated the Accusers' medical needs and observed no visible injuries on either accuser.

33.     According to the IUPD reports, both Accusers refused immediate medical treatment.

34.     Nearly every single IUPD report mentions the security camera footage that existed within the game room, yet the IUPD officers failed to either secure the footage or to view it even through the security camera footage was the best evidence of what took place between John Doe, Jane Doe and the Accusers.  After many attempts by John Doe and the Monroe County Prosecutors to retrieve the footage, and after many promises by the University that the footage would be secured and provided, the footage was never provided and the University finally claimed that it has been lost or destroyed.

35.     John Doe declined to speak with IUPD without a lawyer present.  When John Doe asked to make a phone call, his request was denied.  Instead, John Doe was kept incommunicado, without the ability to phone counsel or his parents for approximately 30 hours.

36.     John Doe and Jane Doe's parents were only able to locate them because friends who were aware of the arrest contacted them and told them what had happened.

37.     IUPD charged John Doe with Robbery, Strangulation and Public Intoxication, remanding him to BPD custody at the Monroe County Jail.  At the time of his arrest, John Doe had no property belonging to the Accusers in his possession; neither of the Accusers showed any signs of physical injury; Accuser 2 did not show any signs of an alleged choking attempt.

38.     When Jane Doe was detained, IUPD officers located one pill in her pocket, and charged Jane Doe with possession of a legend drug.  Jane Doe had a prescription for the pill in her pocket.

39.     IUPD also charged Jane Doe with Theft even though she had no property belonging to either Accuser.  She was also remanded to BPD custody at the Monroe County Jail without being given the ability to make a phone call.

40.     John Doe was detained by IUPD and BPD for approximately 30 hours without the opportunity to make a phone call or receive the assistance of counsel.  He was finally released into the custody of his parents.

41.     Due to lack of credible evidence, namely the University's failure to produce the security camera footage, the Monroe County Prosecutor's Office ultimately dismissed the charges against John Doe and Jane Doe.  Since the dismissal of the charges, the record of the arrest has been expunged.  Both John Doe and Jane Doe were forced to secure assistance of counsel and required to expend large sums of attorney's fees in order to secure the dismissal and the expungement.

**B.     <u>John Doe is Wrongfully Suspended from the University</u>**

42.     The University summarily suspended John Doe on January 31, 2022 and banned him from attending classes and stepping foot on the campus.

43.     Pursuant to the University's rules, John Doe requested a Summary Suspension Formal Hearing ("Formal Hearing") which took place on March 25, 2022.

44.     As part of the Formal Hearing, the three Hearing Panel Members were presented with the police reports prepared as a result of the incident, along with statements prepared by the Accusers and an anonymous witness.

45.     The anonymous witness was not disclosed or brought to the suspension hearing. Instead, the Hearing Panel Members relied on the witness statement prepared by the anonymous witness, who did not observe any physical interaction between John Doe and John Doe's Accusers.

46.     Because John Doe declined to speak with IUPD without a lawyer present on the day of the incident, the police report did not contain John Doe's account of the events that took place.  No statement describing John Doe's version of events was presented at the Formal Hearing. Indeed, John Doe was not allowed any meaningful opportunity to defend himself or to present evidence since the best evidence had been lost or destroyed by the University, which was running the kangaroo court proceedings.

47.      Security cameras were present in the game room of the Avenue on College at the time of the incident.  The University managed the Avenue on College property.  The University claimed the footage was lost or destroyed and, therefore, the footage was not presented at the formal hearing.

48.     The Hearing Panel Members were supposed to examine whether it was "more likely than not" that a policy violation that is a threat to campus safety occurred, using the preponderance of the evidence standard.

49.     The accusations that John Doe choked or laid hands on anyone are solely based on the Accusers' uncorroborated statements.  The anonymous witness statement did not corroborate

the Accusers' testimony as the anonymous witness did not witness the interaction between John

Doe and the Accusers.  No independent witnesses corroborated the Accusers' accusations of

physical violence.

50.     Based on this incomplete and flawed information, the Hearing Panel Members

concluded that it was more likely than not that a policy violation occurred, and John Doe was

summarily suspended and forced to withdraw from all of his classes in April of 2022.

51.     In September, 2022, due to lack of credible evidence, the prosecuting attorney of

Monroe County, Indiana dismissed the charges against John Doe.  At that time, John Doe applied

to Libby Spotts, Associate Dean of Students, Director of Student Conduct, Deputy Title IX

Coordinator, to have his suspension lifted.  The application was summarily denied.  Spotts stated

that the suspension was for one year and the dismissal of the charges would have no effect on the

term of the suspension.

52.     On February 1, 2023, John Doe submitted a Statement for Readmission, seeking

readmission to the University and the 3/2 MBA Program.  John Doe's Statement for Readmission

was granted on March 10, 2023.

**C.     The University Destroys John Doe's Academic Career**

53.     John Doe complied with all University requirements necessary to re-enroll in his

courses and to complete his education.

54.     John Doe's Returning Student Form was processed on June 15, 2023, and he was

approved to return to the University for the fall 2023 semester.

55.     John Doe attempted to re-enroll in the courses necessary to complete his

coursework.  John Doe was able to re-enroll in the courses necessary to complete his undergraduate

degree, however John Doe was not permitted to re-enroll in the MBA courses he needed to complete his 3/2 MBA.

56.     In spring of 2023, John Doe contacted Gretchen Handlos, Executive Director of Graduate Accounting Programs, in order to understand how he could rejoin the 3/2 MBA Program and complete his studies.  Gretchen informed John Doe that, in order to be reinstated to the 3/2 MBA program, he must apply as though he were a new student.  Gretchen acknowledged that John Doe must apply as a new student even though he had already completed ¼ of his 3/2 MBA coursework.

57.     No University policy or procedure was cited in support of Gretchen's insistence that John Doe apply to the 3/2 MBA program as if he were a new student.

58.     As a result of his communications with Gretchen, and because there was no avenue of appealing Gretchen's refusal to allow him to resume his 3/2 MBA coursework, John Doe had no choice but to apply for fall 2024 admission to the 3/2 MBA Program.

59.     Prior to his communications with Gretchen, John Doe did not know that he was not readmitted to the 3/2 MBA Program.

60.     The admission process for John Doe was perfunctory and a sham as he was given no serious consideration and, unsurprisingly, John Doe's application for admission to the 3/2 MBA program was denied on September 7, 2023.

61.     While John Doe did continue his undergraduate coursework with the University, graduating in January of 2024, he lost the benefit of completing the MBA coursework he already began and paid for.

**COUNT I**
**(Denial of Fifth and Sixth Amendment Right to Counsel)**
*John Doe v. Officer Watts, in her individual capacity*

62.     John Doe incorporates all prior paragraphs as if fully alleged in this Paragraph.

63.     Upon his arrest, John Doe requested a telephone call and John Doe declined to speak to IUPD officers without an attorney present.

64.     John Doe was detained for approximately 30 hours without the opportunity to make a telephone call, and without the ability to contact a lawyer.

65.     Officer Watts' actions against John Doe constitute a violation of John Doe's Fifth and Sixth Amendment right to counsel.

66.     Officer Watts' actions were performed under color of state law.

67.     John Doe suffered harm, and continues to suffer harm, as a result of Officer Watt's unlawful actions.

WHEREFORE, Plaintiff, John Doe, respectfully requests that this Court enter judgment in his favor on Count I and against Officer Watts, in an amount exceeding $75,000 to be determined at trial, and grant Plaintiff such other relief as this Court deems just and proper.

**COUNT II**
**(Denial of Fifth and Sixth Amendment Right to Counsel)**
*John Doe v. Officer Chaudion, in his individual capacity*

68.     John Doe incorporates all prior paragraphs as if fully alleged in this Paragraph.

69.     Upon his arrest, John Doe requested a telephone call and John Doe declined to speak to IUPD officers without an attorney present.

70.     John Doe was detained for approximately 30 hours without the opportunity to make a telephone call, and without the ability to contact a lawyer.

71.     Officer Chaudion's actions against John Doe constitute a violation of John Doe's Fifth and Sixth Amendment right to counsel.

72.     Officer Chaudion's actions were performed under color of state law.

73.     John Doe suffered harm, and continues to suffer harm, as a result of Officer Chaudion's unlawful actions.

WHEREFORE, Plaintiff, John Doe, respectfully requests that this Court enter judgment in his favor on Count II and against Officer Chaudion, in an amount exceeding $75,000 to be determined at trial, and grant Plaintiff such other relief as this Court deems just and proper.

**COUNT III**
**(Denial of Fifth and Sixth Amendment Right to Counsel)**
*__John Doe v. Officer Watts, in her Official Capacity and the University__*
*__Monell v. Dep't of Soc. Servs. Of City of New York,__*
*__436 U.S. 658 (1978) (hereinafter "Monell")__*

74.     John Doe incorporates all prior paragraphs as if fully alleged in this Paragraph.

75.     Upon his arrest, John Doe requested a telephone call and John Doe declined to speak to IUPD officers without an attorney present.

76.     John Doe was detained for approximately 30 hours without the opportunity to make a telephone call, and without the ability to contact a lawyer.

77.     Officer Watts' actions against John Doe constitute a violation of John Doe's Fifth and Sixth Amendment right to counsel.

78.     Officer Watts' actions were performed under color of state law.

79.     The University maintained customs, policies and practices that resulted in Officer Watts' unlawful actions.  The University was deliberately indifferent in failing to train and/or supervise Officer Watts.

80.     John Doe suffered harm, and continues to suffer harm, as a result of Officer Watts and the University's unlawful actions.

WHEREFORE, Plaintiff, John Doe, respectfully requests that this Court enter judgment in his favor on Count III and against Officer Watts and the University, in an amount exceeding $75,000 to be determined at trial, and grant Plaintiff such other relief as this Court deems just and proper.

## COUNT IV
### (Denial of Fifth and Sixth Amendment Right to Counsel)
### *John Doe v. Officer Chaudion, in his Official Capacity and the University*
### *Monell*

81.     John Doe incorporates all prior paragraphs as if fully alleged in this Paragraph.

82.     Upon his arrest, John Doe requested a telephone call and John Doe declined to speak to IUPD officers without an attorney present.

83.     John Doe was detained for approximately 30 hours without the opportunity to make a telephone call, and without the ability to contact a lawyer.

84.     Officer Chaudion's actions against John Doe constitute a violation of John Doe's Fifth and Sixth Amendment right to counsel.

85.     Officer Chaudion's actions were performed under color of state law.

86.     The University maintained customs, policies and practices that resulted in Officer Chaudion's unlawful actions.  The University was deliberately indifferent in failing to train and/or supervise Officer Chaudion.

87.     John Doe suffered harm, and continues to suffer harm, as a result of Officer Chaudion and the University's unlawful actions.

WHEREFORE, Plaintiff, John Doe, respectfully requests that this Court enter judgment in his favor on Count IV and against Officer Chaudion and the University, in an amount exceeding

$75,000 to be determined at trial, and grant Plaintiff such other relief as this Court deems just and proper.

## COUNT V
### (Denial of Fifth and Sixth Amendment Right to Counsel)
### *John Doe v. Unknown Officer 1, in his individual capacity*

88.     John Doe incorporates all prior paragraphs as if fully alleged in this Paragraph.

89.     Upon his arrest, John Doe requested a telephone call and John Doe declined to speak to BPD officers without an attorney present.

90.     John Doe was detained for approximately 30 hours without the opportunity to make a telephone call, and without the ability to contact a lawyer.

91.     Unknown Officer 1's actions against John Doe constitute a violation of John Doe's Fifth and Sixth Amendment right to counsel.

92.     Unknown Officer 1's actions were performed under color of state law.

93.     John Doe suffered harm, and continues to suffer harm, as a result of Unknown Officer 1's unlawful actions.

WHEREFORE, Plaintiff, John Doe, respectfully requests that this Court enter judgment in his favor on Count V and against Unknown Officer 1, in an amount exceeding $75,000 to be determined at trial, and grant Plaintiff such other relief as this Court deems just and proper.

## COUNT VI
### (Denial of Fifth and Sixth Amendment Right to Counsel)
### *John Doe v. Unknown Officer 2, in his individual capacity*

94.     John Doe incorporates all prior paragraphs as if fully alleged in this Paragraph.

95.     Upon his arrest, John Doe requested a telephone call and John Doe declined to speak to BPD officers without an attorney present.

96.     John Doe was detained for approximately 30 hours without the opportunity to make a telephone call, and without the ability to contact a lawyer.

97.     Unknown Officer 2's actions against John Doe, constitute a violation of John Doe's Fifth and Sixth Amendment right to counsel.

98.     Defendant Unknown Officer 2's actions were performed under color of state law.

99.     John Doe suffered harm, and continues to suffer harm, as a result of Unknown Officer 2's unlawful actions.

WHEREFORE, Plaintiff, John Doe, respectfully requests that this Court enter judgment in his favor on Count VI and against Unknown Officer 2, in an amount exceeding $75,000 to be determined at trial, and grant Plaintiff such other relief as this Court deems just and proper.

## COUNT VII
### (Denial of Fifth and Sixth Amendment Right to Counsel)
### *John Doe v. Unknown Officer 1, in his Official Capacity and the BPD*
### *Monell*

100.    John Doe incorporates all prior paragraphs as if fully alleged in this Paragraph.

101.    Upon his arrest, John Doe requested a telephone call and John Doe declined to speak to BPD officers without an attorney present.

102.    John Doe was detained for approximately 30 hours without the opportunity to make a telephone call, and without the ability to contact a lawyer.

103.    Unknown Officer 1's actions against John Doe constitute a violation of John Doe's Fifth and Sixth Amendment right to counsel.

104.    Unknown Officer 1's actions were performed under color of state law.

105.    The BPD maintained customs, policies and practices that resulted in Unknown Officer 1's unlawful actions.  The BPD was deliberately indifferent in failing to train and/or supervise Unknown Officer 1.

106.    John Doe suffered harm, and continues to suffer harm, as a result of Unknown Officer 1 and the BPD's unlawful actions.

WHEREFORE, Plaintiff, John Doe, respectfully requests that this Court enter judgment in his favor on Count VII and against Unknown Officer 1 and the BPD, in an amount exceeding $75,000 to be determined at trial, and grant Plaintiff such other relief as this Court deems just and proper.

## COUNT VIII
### (Denial of Fifth and Sixth Amendment Right to Counsel)
### *John Doe v. Unknown Officer 2, in his Official Capacity and the BPD*
### *Monell*

107.    John Doe incorporates all prior paragraphs as if fully alleged in this Paragraph.

108.    Upon his arrest, John Doe requested a telephone call and John Doe declined to speak to BPD officers without an attorney present.

109.    John Doe was detained for approximately 30 hours without the opportunity to make a telephone call, and without the ability to contact a lawyer.

110.    Unknown Officer 2's actions against John Doe, constitute a violation of John Doe's Fifth and Sixth Amendment right to counsel.

111.    Unknown Officer 2's actions were performed under color of state law.

112.    The BPD maintained customs, policies and practices that resulted in Unknown Officer 2's unlawful actions.  The BPD was deliberately indifferent in failing to train and/or supervise Unknown Officer 2.

113.    John Doe suffered harm, and continues to suffer harm, as a result of Unknown Officer 2 and the BPD's unlawful actions.

WHEREFORE, Plaintiff, John Doe, respectfully requests that this Court enter judgment in his favor on Count VIII and against Unknown Officer 2 and the BPD, in an amount exceeding

$75,000 to be determined at trial, and grant Plaintiff such other relief as this Court deems just and proper.

## COUNT IX
### (42 U.S.C. § 1983: Denial of Fourteenth Amendment Due Process)
### *John Doe v. the University and Libby Spotts, as Agent*

114.  John Doe incorporates all prior paragraphs as if fully alleged in this Paragraph.

115.  The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty or property, without due process of law."  In this case, defendants are state actors subject to the Fourteenth Amendment.

116.  Section 1983 of Title 42 of the U.S. Code provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the district of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress . . .

117.  A person has a protected liberty interest in his good name, reputation, honor, and integrity, of which he cannot be deprived without due process.

118.  A person has a protected property interest in pursuing his education, as well as in future educational and employment opportunities and occupational liberty, of which he cannot be deprived without due process.

119.  John Doe's constitutionally protected property interest in his continued enrollment at the University and to be free from arbitrary suspension and dismissal arises from the policies, courses of conduct, practices and understandings established by the University.

120.  John Doe's constitutionally protected property interest further arises from the express and implied contractual relationship between the University and John Doe.

121.    It is well established that Fourteenth Amendment due process protections are required in the higher education disciplinary proceedings.

122.    A person who has been admitted to a university, and who has paid tuition to that university, as a protected property interest in continuing his education at that university until he has completed his course of study.  The state cannot deprive a person of this interest without due process.

123.    As a result, if John Doe, as an IU student, faced disciplinary action that included the possibility of suspension or dismissal if found responsible for a policy violation, then the Due Process provisions of the Fourteenth Amendment to the United States Constitution applied to the disciplinary process that the University used.

124.    The University, as a land grant university established by the State of Indiana, and the individual Defendants, as agents of the University, have a duty to provide its students equal protection and due process of law by and through any and all policies and procedures set forth by the University.

125.    John Doe had obeyed all institutional rules when he was wrongly suspended from the University.

126.    Under both federal and state law, John Doe had a constitutionally protected property interest in continuing his education at the University.

127.    John Doe was entitled to process commensurate with the seriousness of the allegations and the potential discipline, sanctions, and repercussions he was facing.  The allegations in this case resulted in a sanction hat will have lifelong ramifications for John Doe.

128.    John Doe was entitled to fundamentally fair procedures to determine whether he was responsible for the alleged physical altercation.

129.    In the course of such investigation and adjudication, Defendants violated John Doe's clearly established rights under the Due Process Clause of the Fourteenth Amendment through its deprivation of the requirements of procedural fairness by employing a process that did not give a fair chance for John Doe to tell his side of the story, that required no impartial evidence that the events took place as the Accusers' claims, and that concluded a policy violation took place solely based on the Accusers' testimony, and that did not allow John Doe to confront the witnesses against him.

130.    The only objective evidence presented at the hearing was the testimony of an anonymous "witness" who saw nothing, and who was not presented at the hearing.  John Doe was not given the opportunity to confront the witness against him.

131.    Cross-examination has been ruled to be required for basic due process in campus disciplinary cases, yet there was no cross-examination available, and no sworn testimony was taken in violation of due process of law.

132.    As a result, Defendants failed to provide John Doe with the basic due process protections that they are required to provide students accused of a policy violation at a state school, and are also a violation of Federal Law.

133.    Defendants, as well as other agents, representatives, and employees of the University, were acting under color of state law when they showed intentional, outrageous, and reckless disregard for John Doe's constitutional rights.

134.    Defendants all agreed to, approved, and ratified this unconstitutional conduct.

135.    As a result of these due process violations, John Doe continues to suffer ongoing harm, including damages to his reputation and other non-economic and economic damages.  In

particular, suspension from the University denied him the benefits of education at his chosen school and also damaged John Doe's academic and professional reputation.

136.    Accordingly, Defendants are liable to John Doe in violation of 42 U.S.C. § 1983 for violations of the Due Process Clause of the Fourteenth Amendment, and for all damages arising therefrom.

137.    As a direct and proximate result of the above conduct, John Doe sustained tremendous damages, including, without limitation, emotional distress, loss of educational opportunities, loss of employment and income opportunities, economic injuries and other direct and consequential damages.  John Doe's interest in the results of the disciplinary process were significant.

138.    As a result of the foregoing, John Doe is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements and to an injunction enjoining violations of the Fourteen Amendment in the process of investigating and adjudicating policy violation complaints.

WHEREFORE, Plaintiff, John Doe, respectfully requests that this Court enter judgment in his favor on Count IX and against Defendants Indiana University and the Board of Trustees and Libby Spotts, as Agent, in an amount exceeding $75,000 to be determined at trial, plus prejudgment interest, attorney's fees, expenses, costs and disbursements, and grant Plaintiff such other relief as this Court deems just and proper.

### COUNT X
### (42 U.S.C. § 1983: Denial of Fourteenth Amendment Due Process)
### *John Doe v. Libby Spotts, in her Individual Capacity*

139.    John Doe incorporates all prior paragraphs as if fully alleged in this Paragraph.

22

140.   Libby Spotts engaged in actions which deprived John Doe of due process under the law.

141.   Libby Spotts engaged in actions which caused John Doe to be wrongfully suspended from the University, denying him the benefits of education at his chosen school and also damaging John Doe's academic and professional reputation.

142.   Libby Spotts facilitated a Formal Hearing which failed to provide John Doe with the basic due process protections that are required when a student is accused of a policy violation at a state school.

143.   Libby Spotts unilaterally determined that John Doe's suspension should remain in effect despite learning that the Monroe County Prosecutor's office dismissed all charges against John Doe.

144.   Libby Spotts' actions were performed under color of state law.

145.   Jon Doe suffered harm, and continues to suffer harm, as a result of Libby Spott's unlawful actions.

WHEREFORE, Plaintiff, John Doe, respectfully requests that this Court enter judgment in his favor on Count X and against Defendant Libby Spotts, in an amount exceeding $75,000 to be determined at trial, and grant Plaintiff such other relief as this Court deems just and proper.

## COUNT XI
### (Fourth Amendment, False Arrest)
### *Jane Doe v. Officer Watts, in her Official Capacity and the University*
### *Monell*

146.   Jane Doe incorporates all prior paragraphs as if fully alleged in this Paragraph.

147.   Officer Watts engaged in actions against Jane Doe which constitute false arrest.

148.   Officer Watts engaged in actions which caused Jane Doe to be arrested without probable cause.

149.     Officer Watts arrested Jane Doe without probable cause.

150.     Officer Watts violated Jane Doe's Fourth Amendment rights.

151.     Officer Watts falsely arrested Jane Doe both when she initially cuffed her and when she took her to jail and booked her in.

152.     Officer Watts' actions were performed under color of state law.

153.     The University maintained customs, policies and practices that resulted in Officer Watts' unlawful actions.  The University was deliberately indifferent in failing to train and/or supervise Officer Watts.

154.     Jane Doe suffered harm, and continues to suffer harm, as a result of Officer Watts' unlawful actions.

155.     Jane Doe was studying for a Masters of Science degree in Applied Drug Development and anticipates pursuing a career in the pharmaceutical industry.  Jane Doe's unlawful arrest for possession of a legend drug has harmed Jane Doe's career prospects.

WHEREFORE, Plaintiff, Jane Doe, respectfully requests that this Court enter judgment in her favor on Count XI and against Officer Watts and the University, in an amount exceeding $75,000 to be determined at trial, and grant Plaintiff such other relief as this Court deems just and proper.

### COUNT XII
### (Fourth Amendment, False Arrest)
### *Jane Doe v. Officer Chaudion, in his Official Capacity and the University*
### *Monell*

156.     Jane Doe incorporates all prior paragraphs as if fully alleged in this Paragraph.

157.     Officer Chaudion engaged in actions against Jane Doe which constitute false arrest.

158.     Officer Chaudion engaged in actions which caused Jane Doe to be arrested without probable cause.

159.    Officer Chaudion arrested Jane Doe without probable cause.

160.    Officer Chaudion violated Jane Doe's Fourth Amendment rights.

161.    Officer Chaudion falsely arrested Jane Doe both when he initially cuffed her and when he took her to jail and booked her in.

162.    Officer Chaudion's actions were performed under color of state law.

163.    The University maintained customs, policies and practices that resulted in Officer Chaudion's unlawful actions.  The University was deliberately indifferent in failing to train and/or supervise Officer Chaudion.

164.    Jane Doe suffered harm, and continues to suffer harm, as a result of Officer Chaudion's unlawful actions.

165.    Jane Doe was studying for a Masters of Science degree in Applied Drug Development and anticipates pursuing a career in the pharmaceutical industry.  Jane Doe's unlawful arrest for possession of a legend drug has harmed Jane Doe's career prospects.

WHEREFORE, Plaintiff, Jane Doe, respectfully requests that this Court enter judgment in her favor on Count XII and against Officer Chaudion and the University, in an amount exceeding $75,000 to be determined at trial, and grant Plaintiff such other relief as this Court deems just and proper.

### COUNT XIII
### (Fourteenth Amendment Due Process Violation)
### *Jane Doe v. Officer Watts, in her Official Capacity and the University*
### *Monell*

166.    Jane Doe incorporates all prior paragraphs as if fully alleged in this paragraph.

167.    Officer Watts engaged in actions which deprived Jane Doe of due process under the law.

168.    Officer Watts engaged in actions which caused Jane Doe to be arrested without probable cause.

169.    Officer Watts arrested Jane Doe without probable cause.

170.    Officer Watts violated Jane Doe's Fourteenth Amendment Rights.

171.    Officer Watts falsely arrested Jane Doe both when she initially cuffed her and when she took her to jail and booked her in.

172.    Officer Watts' actions were performed under color of state law.

173.    The University maintained customs, policies and practices that resulted in Officer Watts' unlawful actions. The University was deliberately indifferent in failing to train and/or supervise Officer Watts.

174.    Jane Doe suffered harm, and continues to suffer harm, as a result of Officer Watts' unlawful actions.

175.    Jane Doe was studying for a Masters of Science degree in Applied Drug Development, and anticipates pursuing a career in the pharmaceutical industry.  Jane Doe's unlawful arrest for possession of a legend drug has wrongfully harmed Jane Doe's career prospects.

WHEREFORE, Plaintiff, Jane Doe, respectfully requests that this Court enter judgment in her favor on Count XIII and against Officer Watts and the University, in an amount exceeding $75,000 to be determined at trial, and grant Plaintiff such other relief as this Court deems just and proper.

### COUNT XIV
### (Fourteenth Amendment Due Process Violation)
### *Jane Doe v. Officer Chaudion, in his Official Capacity and the University*
### *Monell*

176.    Jane Doe incorporates all prior paragraphs as if fully alleged in this paragraph.

177.    Officer Chaudion engaged in actions which deprived Jane Doe of due process under the law.

178.    Officer Chaudion engaged in actions which caused Jane Doe to be arrested without probable cause.

179.    Officer Chaudion arrested Jane Doe without probable cause.

180.    Officer Chaudion violated Jane Doe's Fourteenth Amendment Rights.

181.    Officer Chaudion falsely arrested Jane Doe both when he initially cuffed her and when he took her to jail and booked her in.

182.    Officer Chaudion's actions were performed under color of state law.

183.    The University maintained customs, policies and practices that resulted in Officer Chaudion's unlawful actions. The University was deliberately indifferent in failing to train and/or supervise Officer Chaudion.

184.    Jane Doe suffered harm, and continues to suffer harm, as a result of Officer Chaudion's unlawful actions.

185.    Jane Doe was studying for a Masters of Science degree in Applied Drug Development, and anticipates pursuing a career in the pharmaceutical industry.  Jane Doe's unlawful arrest for possession of a legend drug has wrongfully harmed Jane Doe's career prospects.

WHEREFORE, Plaintiff, Jane Doe, respectfully requests that this Court enter judgment in her favor on Count XIV and against Officer Chaudion and the University, in amount exceeding $75,000 to be determined at trial, and grant Plaintiff such other relief as this Court deems just and proper.

**COUNT XV**
**(State Law Breach of Contract)**
*John Doe v. the University, Libby Spotts, as Agent, and Gretchen Handlos, as Agent*

186.    John Doe incorporates all prior paragraphs as if fully alleged in this Paragraph.

187.    The University created express and/or implied contracts when John Doe accepted an offer of admission to the University and paid the tuition and fees.

188.    The University breached express and/or implied contracts with John Doe.

189.    The University's policies provides that students are to have a fair and impartial disciplinary process in which it is the responsibility of the University to show that a violation has occurred before any sanctions are imposed.  The University breached its contract with John Doe when it failed to conduct a fair and impartial process, including conducting a hearing and suspension process that relied solely on John Doe's Accusers' testimony, and suspending John Doe without any impartial evidence.  The University lost the best evidence that would prove John Doe's innocence, the surveillance camera footage that was at all times in the custody and control of the University.  Thus, Defendants violated the contract with John Doe when they failed to afford him a proper hearing on the accusations against him.

190.    The University's policies provide that the investigation will be neutral.  In this case, however, the investigation was not neutral, the University failed to conduct an adequate, reliable, and impartial investigation when it conducted its investigation of the Accusers' allegations and subsequent adjudication in a manner that was biased against John Doe.

191.    Based on the aforementioned facts and circumstances, the University breached and violated a covenant of good faith and fair dealing implied in the agreement(s) with John Doe.

192.    The University breached its duty of good faith and fair dealing when:

a.  The University meted out a disproportionate sanction notwithstanding the flawed process and lack of evidence in support of the Accusers' allegations of physical violence;

b.  Libby Spotts, as Agent of the University, unilaterally determined that John Doe's suspension must be enforced for a year, even though Monroe County Prosecutor's Office dismissed the charges against John Doe; and

c.  Upon John Doe's reinstatement to the University, Gretchen Handlos, as Agent of the University, failed to restore him to the degree programs he was taking part in prior to his suspension when she refused to allow him to resume his 3/2 MBA coursework without justification.

193.    John Doe is entitled to recover damages for the University's breach of the express and/or implied contractual obligations described above.  As a direct and proximate result of the above conduct, John Doe sustained damages including, without limitation, emotional distress, loss of educational and career opportunities, economic injuries and other direct and consequential damages.

WHEREFORE, Plaintiff, John Doe, respectfully requests that this Court enter judgment in his favor on Count XV and against Indiana University and the Board of Trustees, Libby Spotts, as Agent and Gretchen Handlos, as Agent, in an amount exceeding $75,000 to be determined at trial, plus prejudgment interest, attorney's fees, expenses, costs and disbursements, and grant Plaintiff such other relief as this Court deems just and proper.

**COUNT XVI**
**(State Law Estoppel and Reliance)**
***John Doe v. the University, Libby Spotts, as Agent, and Gretchen Handlos, as Agent***

194.    John Doe incorporates all prior paragraphs as if fully alleged in this Paragraph.

195.    The University's various policies constitute representations and promises that the University should have reasonably expected to induce action or forbearance by John Doe.

196.    The University expected or should have expected John Doe to accept its offer of admission, incur tuition and fees expenses, and choose not to attend other colleges based on its express and implied promises that the University would not deny John Doe his procedural rights should he be accused of a violation of University policies.

197.    The University expected or should have expected John Doe to accept its offer of readmission, incur tuition and fees expenses, and chose not to attend other colleges or graduate programs based on its express and implied promises that the University would restore John Doe to the degree programs he was taking part in prior to his summary suspension.

198.    John Doe relied to his detriment on these express and implied promises and representations made by the University.

199.    Based on the foregoing, the University is liable to John Doe based on estoppel.

200.    As a direct and proximate result of the above conduct, John Doe sustained damages including, without limitation, emotional distress, loss of educational and career opportunities, economic injuries and other direct and consequential damages

WHEREFORE, Plaintiff, John Doe, respectfully requests that this Court enter judgment in his favor on Count XVI and against Indiana University and the Board of Trustees, Libby Spotts, as Agent and Gretchen Handlos, as Agent, in an amount exceeding $75,000 to be determined at trial, plus prejudgment interest, attorney's fees, expenses, costs and disbursements, and grant Plaintiff such other relief as this Court deems just and proper.

**COUNT XVII**
**(False Arrest / Imprisonment)**
*Jane Doe v. Officer Watts, in her individual capacity*

201.    Jane Doe incorporates all prior paragraphs as if fully alleged in this Paragraph.

202.    Officer Watts engaged in actions against Jane Doe which constitute false arrest / imprisonment.

203.    Officer Watts intentionally and unlawfully restrained Jane Doe and her freedom of movement, depriving Jane Doe of her liberty, without consent.

204.    Jane Doe suffered harm, and continues to suffer harm, as a result of Officer Watts' unlawful actions.

205.    Jane Doe was studying for a Masters of Science degree in Applied Drug Development, and anticipates pursuing a career in the pharmaceutical industry.  Jane Doe's unlawful arrest for possession of a legend drug has harmed Jane Doe's career prospects.

WHEREFORE, Plaintiff, Jane Doe, respectfully requests that this Court enter judgment in her favor on Count XVII and against Officer Watts, in an amount exceeding $75,000 to be determined at trial, and grant Plaintiff such other relief as this Court deems just and proper.

**COUNT XVIII**
**(False Arrest / Imprisonment)**
*Jane Doe v. Officer Chaudion, in his individual capacity*

206.    Jane Doe incorporates all prior paragraphs as if fully alleged in this Paragraph.

207.    Officer Chaudion engaged in actions against Jane Doe which constitute false arrest / imprisonment.

208.    Officer Chaudion intentionally and unlawfully restrained Jane Doe and her freedom of movement, depriving Jane Doe of her liberty, without consent.

209.   Jane Doe suffered harm, and continues to suffer harm, as a result of Officer Chaudion's unlawful actions.

210.   Jane Doe was studying for a Masters of Science degree in Applied Drug Development, and anticipates pursuing a career in the pharmaceutical industry.  Jane Doe's unlawful arrest for possession of a legend drug has harmed Jane Doe's career prospects.

WHEREFORE, Plaintiff, Jane Doe, respectfully requests that this Court enter judgment in her favor on Count XVIII and against Officer Chaudion, in an amount exceeding $75,000 to be determined at trial, and grant Plaintiff such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues presented herein that are capable of being tried by a jury.


January 29, 2024                                     Respectfully submitted,

                                                    JOHN DOE and JANE DOE

                                                    By: */s/ Judith S. Sherwin*
                                                    One of their Attorneys

Judith S. Sherwin, Esq. (IL ARDC #2585529)
jsherwin@agdglaw.com
Alexandra R. Benigni, Esq. (IL ARDC #6335557)
abenigni@agdglaw.com
ARONBERG GOLDGEHN DAVIS & GARMISA
225 West Washington Street, Suite 2800
Chicago, Illinois 60606
312-828-9600

Jason Cleveland, Esq.
jason@clcattorneys.com
CLEVELAND LEHNER CASSIDY
1901 Broad Ripple Avenue
Indianapolis, Indiana 46220
317-202-1659
4878-0783-1961v5

## CERTIFICATE OF SERVICE

I certify that on the 29th day of January, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties who have filed an appearance in this lawsuit by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

By:     */s/ Judith S. Sherwin*
         Attorney for JOHN DOE and JANE DOE